IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BARRY C. PRETLOW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | Case No. CIV-12-1281-D |
| | ) | |
| DEBORAH LEE JAMES, Secretary, | ) | |
| Department of the Air Force, | ) | |
| | ) | |
| Defendant. | ) | |

**O R D E R**

Before the Court are Plaintiff's Pro Se Motion for Summary Judgment [Doc. No. 56] and Defendant's Motion for Summary Judgment [Doc. No. 62]. Each party seeks a judgment as a matter of law under Fed. R. Civ. P. 56 on Plaintiff's Amended Complaint [Doc. No. 20]. Both Motions are fully briefed.[1]

**Factual Background and Procedural History**

Plaintiff, who appears *pro se*, commenced this action under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq*., on November 12, 2012. The operative pleading, the Amended Complaint filed July 13, 2013, presents a single claim that Plaintiff was discharged from a civilian position with the Department of the Air Force on June 1, 2010, in retaliation for filing an EEOC charge of reprisal discrimination on April 23, 2010.

---

[1] Plaintiff did not file a reply brief in support of his Motion, but the filing deadline has passed.

The case has a long procedural history. The Court granted a motion to dismiss the original Complaint for failure to allege administrative exhaustion, but permitted Plaintiff to amend his pleading. Plaintiff filed the Amended Complaint; Defendant answered; and a scheduling conference was set. Upon joint motion of the parties, however, the setting was continued due to Plaintiff's request to further amend his pleading, which was granted. Plaintiff filed his Second Amended Complaint, and Defendant again moved for dismissal. The Court granted the motion but, under the circumstances, allowed Plaintiff to proceed under the Amended Complaint. The case was reset for a scheduling conference, and a scheduling order was entered September 23, 2014.

Acting on a deadline for motions to amend pleadings, Plaintiff moved to further amend the Amended Complaint on October 21, 2014.[2] The motion was denied, in part, because "[n]o proposed amendment has been submitted, and it is unclear from Plaintiff's Motion exactly what changes or additions to the Amended Complaint he proposes to make." *See* 12/1/2014 Order [Doc. No. 48], p.2. Plaintiff filed a motion for reconsideration and attached a copy of his proposed Third Amended Complaint. This pleading recited a litany of events during Plaintiff's employment and complained of racial discrimination, religious discrimination, and additional acts of retaliation. The Third Amended Complaint stated that Plaintiff had satisfied Title VII's administrative exhaustion requirement for all claims, but the Court found "the factual allegations provided to support this conclusory assertion do not

---

[2] Plaintiff's timely motion was stricken for noncompliance with LCvR7.1(*l*), but the Court elected to entertain a compliant motion that was filed after the deadline.

establish that Plaintiff has exhausted any claim other than the claim of reprisal discrimination presented by his Amended Complaint." *See* 2/5/2015 Order [Doc. No. 61], p.3. The Court thus denied the motion because "permitting Plaintiff to file his proposed Third Amended Complaint would be futile." *Id*. p.4. Both parties now seek summary judgment on Plaintiff's retaliatory discharge claim.

**Standard of Decision**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id*. at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id*. If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671

(10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but may consider other materials in the record." *See* Fed. R. Civ. P. 56(c)(3). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## Statement of Undisputed Facts [3]

Plaintiff began work as a sheet metal mechanic at Tinker Air Force Base on February 21, 2006. On that date, he executed a document entitled "Employee's Work Agreement," by which he agreed to work under enumerated conditions. Three conditions were to "work on any shift or assignment given me by my supervisor," to accept "overtime assignments as the need arises," and to "follow established and prescribed procedures, regulations, and directives." *See* Def.'s Ex. 7 [Doc. No. 62-6]; Pl.'s Ex. 2 [Doc. No. 56-4]. In August 2009 and January 2010, Plaintiff received and signed documents entitled "Leave Procedures" regarding annual leave, sick leave, and call-in procedures. *See* Def.'s Exs. 5-6 [Doc. Nos. 62-5 & 62-6]; Pretlow Dep. [Doc. No. 62-1], 48:20-49:12, 50:1-14; Pl's Ex. 1

---

[3] This statement includes material facts presented by Defendant that are properly supported and not opposed in the manner required by Rule 56, as well as additional facts presented by Plaintiff that are properly supported. All facts are stated in the light most favorable to Plaintiff. It should be noted that Plaintiff did not support his Motion or respond to Defendant's Motion in the manner required by LCvR56.1(c). In light of Plaintiff's *pro se* status, however, and a strong judicial preference for deciding cases on the merits, the Court declines to strike Plaintiff's filings for noncompliance with the Local Civil Rules.

[Doc. No. 56-3]. The documents are identical except for the names and telephone numbers of the individuals to be called if Plaintiff needed to be off work and had not requested leave. Plaintiff's immediate supervisor in 2010, and the first person to be called, was Shawn Garrison.[4]

In Plaintiff's work unit, voluntary overtime was requested of employees by a supervisor orally inquiring of each employee whether he or she was willing to work overtime. Similarly, when mandatory overtime was required, a supervisor would orally instruct employees that they were required to work a period of overtime. Mr. Garrison and John Johnson, the deciding official for Plaintiff's termination, both understood that the Employee's Work Agreement signed by Plaintiff authorized them to assign him mandatory overtime work. Plaintiff does not dispute this was their understanding but, instead, disputes whether a mandatory overtime assignment could be made without a commander's written order. Plaintiff contends a supervisor's oral instruction to work mandatory overtime was insufficient and such overtime was not validly authorized. Plaintiff relies on his interpretation of a department policy regarding scheduling, Air Force Instruction 36-807, which was specifically referenced in the local union agreement.

---

[4] In opposition to Defendant's Motion and in other filings (*see* Pl.'s Objection to Def.'s Evidence [Doc. No. 63]), Plaintiff purports to dispute the authenticity of these exhibits. Plaintiff's argument in support of his objection, however, demonstrates that he actually disputes the legality of the documents; he contends they are inconsistent with applicable regulations and the labor agreement with the employees' union. The authenticity of the documents submitted by Defendant is shown by the declaration of a labor relations officer in the personnel office at Tinker Air Force Base. *See* Stastny Decl. [Doc. No. 62-2].

Mr. Garrison approached Plaintiff before February 2, 2010, and told him that he was assigned to work mandatory overtime on that date. Plaintiff was not targeted for overtime obligations; it was required of other employees as well. Plaintiff responded to Mr. Garrison by asking whether there was a written order issued by the lieutenant commander and requesting a copy. Mr. Garrison said such an order was not necessary. Plaintiff informed Mr. Garrison that he could not be compelled to work mandatory overtime without an order from the lieutenant commander and he would not work the assigned overtime on February 2. Plaintiff had failed to report for mandatory overtime on prior occasions, for which he had been disciplined, and he did not work his scheduled period of overtime on February 2.

On February 9, 2010, Plaintiff did not feel well at work and visited the Occupational Medicine Flight (OMF), which is an onsite medical office at Tinker Air Force Base. Plaintiff was examined by a doctor, and received written permission to go home for the remainder of his shift. The doctor advised Plaintiff to see his personal physician before returning to work. Plaintiff provided the OMF paper to Mr. Garrison and stated he did not know how long it would take to get an appointment with his personal physician. Plaintiff then left work, and was absent February 10-12, 2010. During his absence, Plaintiff did not follow the call-in procedures. Plaintiff has testified that he believed he did not need to call in because he provided the OMF paper and advised Mr. Garrison of his need for leave.

Plaintiff was initially recorded as being absent without leave February 10-12, but when he returned to work with a doctor's note regarding the missed days, the absence was

recorded as sick leave. According to Mr. Garrison, however, an infraction for failing to follow the established leave and call-in procedures remained in place. Plaintiff denies that an infraction occurred because, in his view, he was not required to call in on those days. Plaintiff has admitted in discovery that he did not follow the Leave Procedures at any time during his employment with Defendant. Plaintiff's position is that the requirements of the Leave Procedures are not valid or enforceable. Plaintiff maintains that he followed the proper leave procedures set forth in Article 24 of the labor agreement with the employees' union.

On April 1, 2010, Mr. Garrison issued a Notice of Proposed Removal stating he was proposing the termination of Plaintiff's employment due to Plaintiff's failure to follow established leave procedures on February 10-12 and failure to report for mandatory overtime on February 2. The Notice states that Mr. Garrison had discussed these matters with Plaintiff on February 25, 2010, and made an entry in his employee work folder to which Plaintiff did not reply. The Notice also lists two prior disciplinary actions that were considered in deciding to propose Plaintiff's removal: a five-day suspension in January 2010 for failure to report for mandatory overtime; and a five-day suspension in November 2009 for failure to follow a directive and failure to stay gainfully employed. Finally, the Notice advises Plaintiff of his right to reply, stating why the proposed action should not be taken, and the applicable procedures. Mr. Garrison testified in an administrative hearing that he was aware

when he issued the Notice that Plaintiff had previously engaged in EEO activities but they were not a factor in his decision, which he explained as follows:

> Well, basically, I mean he's failing to follow procedures out there. Mandatory overtime I mean it's – he's not the only one that doesn't like to work, I mean, the whole shop, if they had their way, would not like to work.
> And then the impact, as far as morale, for the shop, you know, I can't let Mr. Pretlow get away with one thing and then hold a – everybody else in the shop accountable for it. So my actions would be the same regardless.

MSPB Hr'g Tr. 28:2-13. Mr. Garrison also testified that he disciplined and suspended employees other than Plaintiff for failure to work mandatory overtime.

Plaintiff made his reply to the Notice of Proposed Removal in an email message to the deciding official, Mr. Johnson, on April 23, 2010. Plaintiff did not dispute or specifically address the factual basis for removal stated in the Notice. He instead accused "management officials," meaning Mr. Garrison and other supervisors, of "corruption and/or reprisals" in all disciplinary actions taken against him. *See* Def.'s Ex. 12 [Doc. No. 62-12]. Plaintiff provided no details or explanation of this accusation.

On June 1, 2010, Mr. Johnson issued a Notice of Decision to Remove, announcing his determination that the reasons enumerated by Mr. Garrison "are fully supported by the evidence and warrant [Plaintiff's] removal from Air Force employment" effective that date. *See* Def.'s Ex. 4 [Doc. No. 62-4], ¶ 2. Mr. Johnson was not Plaintiff's supervisor but was asked by his own boss, Mike Mowles, to be the deciding official. He testified in an administrative hearing that a factor in his decision was Plaintiff's non-responsive reply, which "didn't address why he was being removed." *See* MSPB Hr'g Tr. 70:10-18.

8

Mr. Johnson also explained his decision as follows: "[F]or one reason, by not showing up for mandatory overtime puts hardship on the other employees and they have to pick up the pace for when he's not here. . . . [I]t's hard to meet the mission if not everybody is there to support it and work as a team." *Id*. 70:22-25; 71:7-9. Mr. Johnson also testified in the hearing that he did not recall Plaintiff's prior EEO activity. Plaintiff has provided an exhibit to show that Mr. Johnson gave a statement in May 2010 during an EEO investigation regarding a complaint or grievance initiated by Plaintiff, and that Mr. Johnson clearly knew of Plaintiff's EEO activity when the removal decision was made.[5]

## Discussion

Because Plaintiff relies on circumstantial evidence to establish unlawful retaliation, his claim is governed by the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). If Plaintiff establishes a *prima facie* case, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See id*. at 802-03. If Defendant provides such a reason, then the burden shifts back to Plaintiff to show the proffered justification is merely a pretext for unlawful retaliation. *See id*. at 804; *see also Pinkerton v. Colo. Dep't of Transp*., 563 F.3d 1052, 1064 (10th Cir. 2009); *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1210 (10th Cir. 2008).

---

[5] The document submitted by Plaintiff is an unsigned affidavit in which Mr. Johnson appears to give written responses to questions posed by an investigator. Plaintiff also states in his Motion that Mr. Johnson "had participated in Plaintiff's fifth EEO complaint of reprisal occurring on or around May 15, 2010. *See* Pl.'s Mot. Summ. J. [Doc. No. 56], p.12. Plaintiff does not support this statement with evidentiary material or a citation to the record, and thus, the statement cannot properly be considered.

Solely for purposes of a summary judgment ruling, Defendant does not dispute that Plaintiff has established a *prima facie* case of retaliation. *See* Def.'s Mot. Summ. J. [Doc. No. 62], p.12.[6] Defendant instead contends that legitimate, non-retaliatory reasons for Plaintiff's termination have been shown and Plaintiff cannot establish pretext. "To show pretext, [Plaintiff] 'must produce evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" *Fye v. Oklahoma Corp. Comm'n*, 516 F.3d 1217, 1228 (10th Cir. 2008) (quoting *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)). Tenth Circuit law is clear that close temporal proximity is not sufficient, without more, to show pretext and overcome a justifiable reason for the employer's adverse action. *See Pinkerton*, 563 F.3d at 1066; *Annett v. Univ. of Kansas*, 371 F.3d 1233, 1240-41 (10th Cir. 2004).

Plaintiff argues in support of his Motion, and in opposition to Defendant's Motion, that Defendant cannot prove he engaged in the misconduct alleged in the Notice of Proposed Removal. This argument is misguided. "The defendant's burden at this stage is one of

---

[6] To satisfy his *prima facie* burden, Plaintiff must show: 1) he engaged in protected opposition to discrimination; 2) his employer subsequently took action that a reasonable employee would have found materially adverse; and 3) a causal connection exists between his protected activity and the adverse action. *See Metzler v. Federal Home Loan Bank*, 464 F.3d 1164, 1171 (10th Cir. 2006); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006). "For purposes of establishing a prima facie case of retaliation, a plaintiff can establish a causal connection by temporal proximity between the protected activity and adverse action." *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1228 (10th Cir. 2008).

production, not one of persuasion." *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1191 (10th Cir. 2000) (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)). The determination that a defendant has met its burden of production . . . can involve no credibility assessment." *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). The Supreme Court has given a "repeated admonition that the Title VII plaintiff at all times bears the 'ultimate burden of persuasion.'" *Hicks*, 509 U.S. at 511 (citing cases).

In this case, Defendant's evidence shows the decision to terminate Plaintiff's employment was made by Mr. Johnson and not Mr. Garrison (the supervisor whom Plaintiff had primarily accused of misconduct or reprisal). Regardless whether Mr. Johnson knew of Plaintiff's EEO activities, Plaintiff points to no fact or evidence drawing into question Mr. Johnson's stated reasons for his removal decision. Plaintiff disputes his supervisors' authority to require mandatory overtime under the Employee Work Agreement and disagrees that he was required to call in for absences on February 10-12 under the Leave Procedures, but Plaintiff does not dispute the sincerity of Mr. Johnson's belief that the Employee Work Agreement and the Leave Procedures were enforceable against Plaintiff. "'[T]he pertinent question in determining pretext is not whether the employer was right to think the employee engaged in misconduct, but whether that belief was genuine or pretextual.'" *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1206 (10th Cir. 2000) (quoting *Hardy v. S.F. Phosphates L.C.*, 185 F.3d 1076, 1080 (10th Cir.1999) (internal quotations omitted)). "To support an

inference of pretext, . . . a plaintiff must produce evidence that the employer did more than get it wrong. He or she must come forward with evidence that the employer didn't really believe its proffered reasons for action and thus may have been pursuing a hidden discriminatory agenda." *Johnson v. Weld Cty.*, 594 F.3d 1202, 1211 (10th Cir. 2010). Plaintiff has not produced any such evidence in this case.

Because Plaintiff primarily complains about the conduct of his immediate supervisor, Mr. Garrison, he may be arguing for "cat's paw" liability in which a subordinate's bias is imputed to the final decisionmaker. *See, e.g.*, *Ward v. Jewell*, 772 F.3d 1199, 1205 (10th Cir. 2014). Plaintiff points to no facts, however, suggesting that Mr. Garrison singled Plaintiff out for different treatment. To the contrary, the undisputed facts and evidence show that Mr. Garrison even-handedly applied his interpretation of the work rules in question, enforcing mandatory overtime to all employees under his supervision. There is no contention that Mr. Garrison did not require all employees to follow the Leave Procedures. In short, Plaintiff fails to identify any fact or evidence to suggest Mr. Garrison proposed Plaintiff's removal for reasons other than Plaintiff's refusal to work mandatory overtime and his failure to call in when he was absent from work on February 10-12, together with his past disciplinary infractions. In short, Plaintiff has failed to come forward with any facts from which to infer that the stated reasons for his termination are pretextual or that the decision was actually motivated by retaliation.

Upon careful consideration of Plaintiff's arguments and the summary judgment record, the Court finds that Plaintiff has failed to demonstrate a genuine dispute of material fact regarding his retaliatory discharge claim and, therefore, Defendant is entitled to summary judgment on this claim.

**Conclusion**

For these reasons, Defendant is entitled to summary judgment on the Amended Complaint.

IT IS THEREFORE ORDERED that Plaintiff's Pro Se Motion for Summary Judgment [Doc. No. 56] is DENIED and Defendant's Motion for Summary Judgment [Doc. No. 62] is GRANTED. Judgment shall be entered accordingly.

IT IS SO ORDERED this 26th day of August, 2015.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE